[No. A076008. First Dist., Div. Five. Oct. 24, 1997.]

LYON METAL PRODUCTS, INC., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

---

COUNSEL

Daniel E. Lungren, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendant and Appellant.

Pillsbury, Madison & Sutro, Walter R. Allan, Thomas V. Loran III and David P. Jedrzejek for Plaintiff and Respondent.

---

OPINION

PETERSON, P. J.—Appellant State Board of Equalization (Board) contends the trial court erred when it held California's state sales tax was invalid to the extent it applied to drop shipments of goods from California wholesalers directly to retail customers inside California. We agree with the Board. Contrary to the trial court's conclusion, the drop shipments in issue

here are explicitly made subject to the state retail sales tax by the provisions of the second paragraph of Revenue and Taxation Code[1] section 6007. Further, again contrary to the trial court's conclusion, section 6007 is not unconstitutional as a burden on interstate commerce in these circumstances. We, therefore, reverse and remand with instructions to enter judgment in favor of the Board.

## I. FACTS AND PROCEDURAL HISTORY

Lyon Metal Products, Inc. (Lyon) brought this action contending that the drop shipment rule codified in the second paragraph of section 6007 is invalid on both statutory and constitutional grounds.

It is clear as a factual matter that the transactions in issue here would be subject to the state retail sales tax under the drop shipment rule, *if that rule is valid*. In each transaction, Lyon shipped goods subject to the retail sales tax from Lyon's California warehouse directly to a California retail customer. In each case, Lyon made this in-state delivery at the request of an out-of-state retailer, who had bought the goods at wholesale from Lyon and then resold them at retail to a California retail customer. This is a drop shipment—direct delivery of goods to a consumer thereof within this state from a warehouse within this state. Such drop shipment is defined as a retail sale subject to sales tax, i.e., the person making the delivery of goods to a California consumer "shall be deemed the retailer of that property." (§ 6007, 2d par.)

The trial court, however, ruled the sales tax imposed under the drop shipment rule was invalid, on both statutory and constitutional grounds. The Board filed a timely appeal.

## II. DISCUSSION

We conclude the drop shipments in issue here were validly subject to the retail sales tax under section 6007, and that section 6007 is not unconstitutional. We, therefore, reverse the decision of the trial court and remand with directions to enter judgment for the Board.

 Section 6007 defines the retail sales transactions which are subject to the California sales tax. The first paragraph of section 6007 states the general rule that all retail sales are subject to the tax, except wholesale transactions made for subsequent resale to the ultimate consumer: "A 'retail sale' or 'sale at retail' means a sale for any purpose other than resale in the regular course of business in the form of tangible personal property."

[1] All subsequent statutory references are to the Revenue and Taxation Code.

The second paragraph of section 6007, which is more directly in issue here, specifically codifies the drop shipment rule by providing that a drop shipment is a retail sale subject to sales tax: "When tangible personal property is delivered by an owner or former owner thereof, or by a factor or agent of that owner, former owner, or factor to a consumer or to a person for redelivery to a consumer, pursuant to a retail sale made by a retailer not engaged in business in this state, the person making the delivery shall be deemed the retailer of that property. He or she shall include the retail selling price of the property in his or her gross receipts or sales price."

In order to properly explain the role this drop shipment rule plays in California tax laws, we must briefly summarize the history of California retail sales tax provisions.

■ California's retail sales tax was enacted in 1933. (Stats. 1933, ch. 1020, pp. 2599-2612.) The sales tax as originally enacted did not impose any tax on sales occurring outside California and, thus, gave consumers a strong incentive to buy from out-of-state retailers and avoid payment of the sales tax. The Legislature attempted to close this loophole by enacting the Use Tax Act of 1935, which imposed on the consumer of goods bought out of state a use tax, in an amount equal to the sales tax otherwise payable. (Stats. 1935, ch. 361, § 3, pp. 1298-1299.)

However, the sales tax as originally enacted also did not impose a sales tax on drop shipments, in which goods inside California are first sold at wholesale to an out-of-state retailer, then resold to a consumer inside California, and then shipped directly from the California warehouse of the wholesaler to the California consumer. The drop shipment rule, as now codified in the second paragraph of section 6007, was enacted in 1939 to make such drop shipments within California subject to sales tax; and the rule has been in effect with minor amendments since 1939. (Stats. 1939, ch. 679, § 2(c), p. 2171.)

California's sales and use tax laws, including the drop shipment rule, comprise an integrated system of taxation and "constitute a double filter designed to catch all transactions which result in tangible personal property joining the aggregate of capital assets within this state. . . ." (*Union Oil Co.* v. *State Bd. of Equal.* (1963) 60 Cal.2d 441, 449 [34 Cal.Rptr. 872, 386 P.2d 496] (*Union Oil*).) California's system of sales and use taxes has repeatedly been upheld against statutory and constitutional challenges, so that "all tangible personalty sold or utilized in California is taxed once for the support of the state government." (*Southern Pac. Co.* v. *Gallagher* (1939) 306 U.S. 167, 171 [59 S.Ct. 389, 391, 83 L.Ed. 586] (*Southern Pac.*); see also *Union Oil, supra,* 60 Cal.2d at pp. 449-450.)

Since its enactment in 1939, the drop shipment rule in California has apparently never been subject to any successful legal challenge. We are unaware of any California decision, or any decision from a sister state with a similar law, which holds the drop shipment rule is invalid. The trial court principally based its ruling on a trial court decision from Connecticut. Unfortunately, that Connecticut trial court decision was one whose rationale was subsequently undermined by the Connecticut Supreme Court on appeal, in *Steelcase, Inc.* v. *Crystal* (1996) 238 Conn. 571 [680 A.2d 289] (*Crystal*). The *Crystal* decision indicates that a drop shipment rule, as applied to goods shipped from a warehouse inside the state and delivered to consumers inside the state, would be valid. (Pp. 295-296.) Because the goods in *Crystal* were shipped from outside Connecticut and delivered to Connecticut consumers outside Connecticut, and in Michigan, the Connecticut drop shipment rule could not be applied in that case. (Pp. 297-298.) The *Crystal* decision, therefore, does not support the trial court's ruling in this case; it vitiates it. The goods in the case at bench were warehoused in California, shipped from California, and delivered to retail consumers in California, so the California drop shipment rule as stated in section 6007 could properly be applied.

The other out-of-state cases cited by the trial court were also inapposite on this point. For instance, New Jersey does not have a drop shipment rule codified by statute in language similar to that in the second paragraph of section 6007, so the decision of a New Jersey tax court in *Steelcase, Inc.* v. *Director, Division of Taxation* (1993) 13 N.J. Tax 182, is not on point here. In addition, the decision of the New Mexico Court of Appeals in *Siemens* v. *Taxation & Revenue Dept.* (1994) 119 N.M. 316 [889 P.2d 1238] (*Siemens*), cited by Lyon, did not involve the legal issue presented here of whether a drop shipment could be made subject to sales tax; *Siemens* instead dealt with New Mexico's unlawful refusal to accept a resale exemption certificate from another state, an issue not present here.

The trial court also invalidated the California drop shipment rule set forth in the second paragraph of section 6007, by relying erroneously on the general language of another section, section 6091.[2] In doing so, the court ignored the Legislature's alternative definition of retail sale in the second paragraph of section 6007, codifying the drop shipment rule. This error was compounded by an interpretation of section 6091 as granting an exception from the sales tax on drop shipments. Section 6091 does no such thing.

---

[2]Section 6091 provides: "For the purpose of the proper administration of this part and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property is not a sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale."

Rather, it provides a statutory presumption that "all gross receipts are subject to the [sales] tax until the contrary is established" (*ibid.*), i.e., that *all* sales, including drop shipments, are presumed to be retail sales subject to sales tax. That presumption of section 6091 actually undermines and fails to support the trial court's ruling.

Lyon does not contend its purchasers certified the goods sold were purchased for resale. It does not dispute that the goods were delivered to consumers, and were not for resale by them. Lyon argues it established the wholesale nature of the subject transactions by showing the deliveries from Lyon's California warehouse to California customers were preceded by sales at wholesale of the same goods to out-of-state retailers. That showing did not rebut the presumption Lyon's deliveries of goods from its California warehouse to California consumers were taxable sales under the provisions of section 6091 and the drop shipment provisions of section 6007.

If Lyon had sought to establish that it had delivered the goods in question to California wholesalers for purposes of resale by those wholesalers to other customers from out of state, the presumption Lyon would be required to rebut under section 6091 might be relevant here; but that is not the case.

■ Finally, the trial court held the drop shipment rule in section 6007 was unconstitutional because it allegedly discriminates against interstate commerce. This ruling was also erroneous.

The trial court reasoned that since the sales tax is imposed on a transaction under the drop shipment rule only when the intermediate purchaser who first purchased the goods at wholesale is not engaged in business in California, the drop shipment rule, therefore, "discriminates" against out-of-state initial purchasers in violation of the interstate commerce clause of the federal Constitution. This elaborate argument, however, propounded to the trial court by Lyon, is a house of cards. It ignores the crucial fact that the same sales tax would be imposed on the transaction if it had happened entirely within California, i.e., a California consumer purchasing directly from a California wholesaler without involvement of an out-of-state intermediary, because the California wholesaler would charge the sales tax and forward it to the state, as Lyon should have done here.[3] Similarly, the same amount of tax would be imposed on the transaction if both wholesaler and retailer were outside the state, in the form of a use tax to be paid by the California

---

[3]Lyon contends it did not know how much sales tax to charge because it did not know how much the California consumer had agreed to pay the out-of-state wholesaler who bought the goods from Lyon. If that is true, however, then all Lyon had to do was to ask the wholesaler this question when the delivery in California was ordered.

consumer-customer. We fail to perceive any unconstitutional discrimination on these facts.

■ The federal Supreme Court has held that a state tax does not unconstitutionally burden interstate commerce if it satisfies four conditions: (1) the tax must be applied to an activity having a substantial nexus to the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not be imposed in a discriminatory way on interstate commerce only; and (4) the tax must be fairly related to services provided in the taxing state. (*Complete Auto Transit, Inc.* v. *Brady* (1977) 430 U.S. 274, 279 [97 S.Ct. 1076, 1079, 51 L.Ed.2d 326].) The tax in question here satisfies every one of those conditions.
■ As to the first factor, the goods were stored in a California warehouse and were delivered from there to California consumers, so there was a sufficient nexus with California. Second, there is no unfair apportionment or double taxation; all relevant events occurred in California, and the transactions will be taxed only once by California. Third, there is no discriminatory taxation, because the same tax will be charged on the transactions, and the same tax will ultimately be paid by the retail customers, whether as sales tax or use tax, regardless of the parties' residences. Finally, Lyon concedes the fourth factor is present here, since the tax is fairly related to services provided by the taxing state. Therefore, the tax in issue here is valid. (*Ibid.*)

The trial court also failed to defer to the practical realities of the situation, long recognized by the Legislature. The drop shipment rule was added by the Legislature in 1939 in order to plug a loophole in the tax code, under which parties could argue a sale was exempt from sales tax if an out-of-state intermediary was involved, even if the goods and the buyer were at all times within this state. The drop shipment rule is not discriminatory; it equalizes the tax burden on transactions without regard to whether they involve out-of-state intermediaries, just as does the California use tax. "California's exaction for the distribution of tangible personal property is the same, whether purchased within or without her borders or whether paid by the retailer or consumer. There is an equal charge against what is used, whatever its source." (*Southern Pac., supra*, 306 U.S. at p. 172 [59 S.Ct. at p. 391].)[4]

The trial court's decision here, if made widely applicable in California, would not end any alleged unconstitutional discrimination against out-of-state parties. It would, instead, simply recreate a reverse discrimination in

---

[4]This is, therefore, not at all a case similar to the recent decision of the federal Supreme Court in *Camps Newfound/Owatonna* v. *Harrison* (1997) 520 U.S. __ [117 S.Ct. 1590, 137 L.Ed.2d 852] (*Camps Newfound*), which Lyon cites in a supplemental brief. In *Camps Newfound*, the high court invalidated a *property tax scheme*, not a sales tax, in which the property tax was charged to certain charitable entities only if they had clients from out of the state. There is no similar discrimination here, because the same tax will be charged on the transaction, whether as sales tax under the drop shipment rule or use tax imposed on the consumer, regardless of the parties' residences. (See *Southern Pac., supra*, 306 U.S. at p. 172

taxation of in-state retailers, by reopening the gaping loophole which discriminates in favor of out-of-state intermediaries, that the Legislature validly closed. No statutory or constitutional basis, or any reason in common sense, exists for doing so.

## III. DISPOSITION

The judgment of the trial court is reversed, and the matter is remanded with instructions to enter judgment in favor of the Board.

Haning, J., and Jones, J., concurred.

A petition for a rehearing was denied November 18, 1997, and respondent's petition for review by the Supreme Court was denied January 14, 1998.

---

[59 S.Ct. at p. 391].) Thus, the *Camps Newfound* case, like the other older cases cited by Lyon, is inapposite.