HARRIS, J.
concurring and concurring specially.
In this case, the District purchased a conservation easement over certain property owned by appellant’s landlord, Wil-lowbrook Coal Company. A condition of such purchase was that Willowbrook would deliver the property “cattle” free. This was because the purpose of the acquisition was to clean up the water of the St. Johns River and the presence of a cattle operation adjacent to the river was considered to be a major pollutant. Appellants were thus required to move their dairy operation from the property and did so. One would assume that either Willowbrook had the right to require such removal under any contractual relationship it had with appellants or was ready to pay (or perhaps did pay) appropriate restitution. Whatever. The District also, as a part of a single transaction, purchased the fee to adjoining property from Willowbrook and simultaneously sold a conservation easement over this parcel to The United States of America, “acting by and through the Commodity Credit Corporation, U.S. Department of Agriculture.” The proceeds from this sale to the United States were in fact used by the District to acquire the property now subject to the federal government’s conservation easement.
Appellants claim a right under both state and federal statutes for a relocation award. I agree with the majority that neither is applicable.
First, section 421.55, Florida Statutes, “authorizes” the District to “comply with the provisions and requirements” of the Uniform Relocation Assistance Act in those public projects for which federal-aid funds are used. Although the District is authorized by this statute to pay relocation assistance under certain circumstances, it is not directed to do so. In fact, unless the federal act authorizing the contribution of federal funds to a state project “requires” relocation assistance, the District is not empowered to pay the cost of relocation. The purpose of section 421.55, in my view, is to authorize the District (and other state agencies) when entering into agreements with the United States (through its various agencies) in order to receive a “grant, loan *271 or contribution” of federal funds for a particular project to agree to make relocation assistance payments. The federal act relied on herein by appellant imposes on the applicable federal agency, if the project requires the payment of relocation assistance, to require the state to give satisfactory assurance that it will pay the appropriate relocation assistance. The record in this case discloses that the applicable federal agency did not seek any assurance from the District that the District would pay relocation expenses. And there is no indication in the record that the District ever undertook the responsibility to pay such expenses. Hence, since the District did not agree, and was not “required” to agree, to pay relocation assistance, its authority to make such payment, even if it elected to do so, is lacking.
Let’s examine alternative choices the District could have made which would clearly not burden it with an obligation to pay relocation expenses: (1) Had the District purchased conservation easements over both parcels requiring the removal of the cattle and used only state funds, appellants would be entitled to no relocation assistance. (2) If the District had purchased a conservation easement over one parcel and the fee to the adjoining parcel with state funds and sometime later conveyed an easement over its fee to the federal government for valuable consideration, still no right to relocation assistance would accrue to appellants. (3) Assume that the District had purchased a conservation easement over the parcel containing the dairy operation with state funds and, at the same time, the federal government had purchased a conservation easement on the property adjoining the cattle operation directly from Willowbrook. Even then, neither the District nor the federal government would have an obligation to pay relocation assistance. Instead of choosing any one of these options, the District and the Department of Agriculture chose a procedure which combined all three-by simultaneously selling an easement to the federal government over adjacent property it acquired from Willowbrook at the same time it purchased the easement over the parcel containing the dairy operation, the District obtained federal funds which became “state” money which, together with other state funds, was used to acquire the property over which the federal easement applied. Does this violate the provisions of any state or federal law?
The position taken by appellants herein is that the St. Johns River Water Management District may not escape its obligation to pay relocation assistance by the manner in which it structures its agreement with the federal agency. By so holding, appellant urges that we broaden the definition of “loan, grant or contribution” to include a displacing agency’s receipt of income from the federal government in any form, even income received by selling property to the federal government for a consideration. I agree with the majority that it is up to Congress, and not this court, to define, or redefine, “federal financial assistance.”
The record herein suggests that only District money was used to acquire the conservation easement over the parcel on which the dairy was located and that the funds acquired from the sale to the United States contributed only to the purchase of the fee to the second parcel.
Even assuming that this transaction was intentionally structured so as to avoid the consequence of paying relocation expenses, would that justify this court’s intervention? Obviously the Department of Agriculture, charged with the responsibility of dispensing grants, loans and contributions under the federal program involved herein, found no violation of the federal statute since it participated in the ' arrangement and *272 sought no assurance that relocation expenses would be paid. Its interpretation of the law entrusted to it for interpretation and application should be given some deference. By not requiring assurance that relocation expenses would be paid by the District, the Department of Agriculture clearly determined that this transaction was not covered by the Uniform Relocation Assistance Act. If the District gave no assurance that it would pay relocation expenses in order to receive a grant, loan or contribution of federal funds, then how does section 421.55, Florida Statutes, require (or even authorize) the payment of relocation expenses?
There is a difference between avoiding an obligation and evading one. This distinction is most often encountered in tax situations. The Maryland Tax Court clearly enunciated this difference in Saks & Company v. Comptroller of the Treasury, 1989 WL 112966 (Md.Tax 1989): “Avoidance of a tax is a course of action whereby one adheres to the statutes in order to result in no tax being owed. Evasion of a tax is a course of action whereby one violates the law to result in no tax being owed or one refuses to pay a tax that is due and owing. Avoidance is permissible while evasion is not.”
The Supreme Court of Connecticut, in Steelcase, Inc. v. Crystal, 238 Conn. 571, 680 A.2d 289, 297 (1996), stated it this way: “We have noted, however, that [u]nlike tax evasion, tax avoidance through careful planning of both transactions and corporate structure is a legitimate right of every taxpayer.”
In this case, it cannot be denied that an actual purchase of an asset for consideration took place. If one purchases a car he does not thereby loan, grant or contribute anything to the seller. The seller has received a purchase price, nothing more. Unless this sale of the easement herein was somehow a sham, then no grant, loan or contribution took place. To be a sham, the easement conveyed to the government would have to be meaningless. It is not suggested by this record that the sale of the easement to the United States was a sham, that there was a winking of the eyes as the money and the title to the conservation easement were exchanged. Indeed, the United States received and the District gave up many of the normal rights of the fee owner when the conservation easement was delivered. There was a quid pro quo.