280                                      451 Mass. 280 (2008)

Bell Atlantic Mobile of Massachusetts Corporation, Ltd. *v.* Commissioner of Revenue.

BELL ATLANTIC MOBILE OF MASSACHUSETTS CORPORATION,
LTD.[1] *vs.* COMMISSIONER OF REVENUE & others[2]
(and a companion case[3]).

Suffolk. March 6, 2008. - April 28, 2008.

Present: GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Administrative Law,* Judicial review, Substantial evidence, Agency's interpretation of statute. *Taxation,* Appellate Tax Board: appeal to Supreme Judicial Court; findings; Commissioner of revenue. *Telephone Company. Statute,* Construction. *Words,* "Telephone company," "Cellular telephone."

The Appellate Tax Board properly concluded, in keeping with the language and purpose of the relevant regulatory and tax statutes, that a provider of wireless cellular telecommunications service, lacking the interconnectedness of the land-line telephone system infrastructure, was not a "telephone company" for purposes of central valuation of certain of its personal property by the Commissioner of Revenue under G. L. c. 59, § 39, but rather was classified as a commercial mobile radio service (CMRS) regulated under G. L. c. 159, the common carrier statute, and subject to separate valuation by local boards of assessors. [283-289]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*Helgi C. Walker,* of the District of Columbia (*Elbert Lin,* of the District of Columbia, & *Kathleen King Parker* with her) for Bell Atlantic Mobile of Massachusetts Corporation, Ltd.

*Richard G. Chmielinski,* Assistant City Solicitor, for Board of Assessors of Newton.

*Daniel J. Hammond,* Assistant Attorney General (*Daniel A. Shapiro,* Special Assistant Attorney General, with him) for Commissioner of Revenue.

---

[1] Doing business as Verizon Wireless.

[2] Boards of assessors of 220 cities and towns.

[3] Board of Assessors of Newton *vs.* Commissioner of Revenue & another.

The following submitted briefs for amici curiae:

*Rosemary Crowley, David J. Martel, & Thomas J. Urbelis* for Massachusetts Association of Assessing Officers & another.

*Anthony M. Ambriano* for Board of Assessors of Boston & another.

*Michael E. Malamut, Martin J. Newhouse, & Jo Ann Shotwell Kaplan* for New England Legal Foundation & another.

COWIN, J. The central issue in this case is whether a provider of wireless cellular telecommunications, or "cell phone" service, qualifies as a "telephone company" in order to obtain central valuation of certain of its personal property by the Commissioner of Revenue (commissioner), rather than being subjected to separate valuations by local boards of assessors.[4] For the reasons stated below, we hold that a provider of wireless cellular telecommunications service is not a "telephone company" for purposes of central valuation.

*Background.* Bell Atlantic Mobile of Massachusetts Corporation, Ltd. (Bell Atlantic Mobile), the successor in interest to Bell Atlantic Mobile of Massachusetts LLC, is a provider of what is popularly known as "cell phone" service. As currently organized, Bell Atlantic Mobile is a Bermuda corporation doing business in Massachusetts under the name "Verizon Wireless."

For fiscal year 2004, the Commissioner of Revenue centrally valued Bell Atlantic Mobile's property, treating it as a "telephone company" for purposes of G. L. c. 59, § 39; however, the commissioner determined that Bell Atlantic Mobile was not eligible for the property tax exemption granted to certain utility corporations[5] because it was not incorporated as of January 1, 2003. Bell Atlantic Mobile appealed under G. L. c. 59, § 39,

---

[4]Pursuant to G. L. c. 59, § 39, "the machinery, poles, wires and underground conduits, wires and pipes of all telephone and telegraph companies" are subject to central valuation by the Commissioner of Revenue (commissioner), rather than to separate valuations by the local boards of assessors of the various municipalities in which the property is located.

[5]General Laws c. 59, § 5, Sixteenth (1) (*d*), the "corporate utility exemption," grants an exemption from property tax to certain personal property of "a foreign corporation subject to taxation under section . . . fifty-two A . . . of . . . chapter sixty-three." Eligible corporations are exempt from property tax on all personal property except "poles, underground conduits, wires and pipes, and machinery used in manufacture." *Id.* General Laws c. 63, § 52A, in turn, contains a definition of "[u]tility corporation" that includes "every

to the Appellate Tax Board (board), naming as appellees both the commissioner and the boards of assessors of the 220 municipalities in which it owns property ("§ 39 appeals"). In each of the § 39 appeals, Bell Atlantic Mobile argued that the commissioner's valuation of its property was too high, both because it included property that should have been subject to the corporate utility exemption, and because the commissioner's valuation methodology was improper. Each § 39 appeal also sought abatement of property taxes from the relevant board of assessors.[6] Seeking the same relief under other provisions, Bell Atlantic Mobile filed separate appeals pursuant to G. L. c. 59, §§ 64 and 65, requesting abatement of property taxes paid to the 220 cities and towns in which its personal property was located ("§ 65 appeals"). Meanwhile, the board of assessors of Newton filed its own § 39 appeal, arguing that Bell Atlantic Mobile was not a "telephone company" within the meaning of G. L. c. 59, § 39, and that the commissioner had therefore erred in centrally valuing its property. The Newton assessors argued, additionally, that the commissioner had undervalued the taxable property.

The board consolidated the § 39 appeals and the § 65 appeals. It then bifurcated the issues for trial, holding hearings first on the issue of Bell Atlantic Mobile's eligibility for central valuation and the corporate utility exemption, and deferring all questions of the correct value of the taxable property.

The board decided the consolidated § 39 appeals on May 15, 2006, holding that neither Bell Atlantic Mobile nor its limited liability company predecessor was a "telephone company" entitled to central valuation under G. L. c. 59, § 39. The same day, the board also issued an order in the § 65 appeals, ruling that because Bell Atlantic Mobile was not a "telephone company" at any time, it was not eligible either for central valuation under § 39 or for the corporate utility exemption under G. L. c. 59, § 5, Sixteenth (1) (*d*). The board stayed further action on the § 65 appeals to allow the parties to seek judicial

incorporated telephone and telegraph company subject to chapter one hundred and sixty-six."

[6] The record before us does not show that Bell Atlantic Mobile sought abatement in the § 39 appeals; however, we accept the board's finding that it did.

review of its decision that Bell Atlantic Mobile is not entitled to central valuation under § 39.[7] Bell Atlantic Mobile appealed. We granted Bell Atlantic Mobile's application for direct appellate review, and we affirm the decision of the board.[8]

*Discussion.* Our review of a board decision is limited to questions of law. *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 601 (1986). See G. L. c. 58A, § 13. We will not disturb the board's findings so long as they are supported by substantial evidence and a correct application of the law. *Koch* v. *Commissioner of Revenue*, 416 Mass. 540, 555 (1993). The proper interpretation of a statute is a question of law for us to resolve. See *Gray* v. *Commissioner of Revenue*, 422 Mass. 666, 675 n.12 (1996), quoting *Massachusetts Community College Council MTA/NEA* v. *Labor Relations Comm'n*, 402 Mass. 352, 353 (1988) ("the duty ultimately to interpret the statute rests with the court"). As the board is an agency charged with administration of the tax law, however, its interpretations of tax statutes "may be given weight by this court." *Commissioner of Revenue* v. *McGraw-Hill, Inc.*, 383 Mass. 397, 401 (1981), quoting *Xtra, Inc.* v. *Commissioner of Revenue*, 380 Mass. 277, 283 (1980).

The board made extensive findings of fact, based on substantial evidence, regarding the development and operation of wireless cellular telecommunications technology. Cellular "telephones" use radio frequencies licensed by the Federal Communications Commission (FCC) to transmit voice and data over a network of radio antennae mounted on towers and buildings. When a subscriber to "cell phone" service presses the "send" button on a handset, a radio signal is transmitted to a nearby cellular base station. The signal transmits information identifying

---

[7]The board did not finally resolve the § 65 appeals because outstanding valuation issues remained. It did finally resolve the § 39 appeals by concluding that Bell Atlantic Mobile is not a telephone company or eligible for central valuation by the commissioner.

The parties devote considerable argument to the corporate utility exemption, see G. L. c. 59, § 5, Sixteenth (1) (*d*). That matter is not at issue in the § 39 appeals that are before us.

[8]We acknowledge the amicus briefs submitted by the boards of assessors of the city of Boston and the town of Brookline; the Massachusetts Association of Assessing Officers and Massachusetts City Solicitors and Town Counsel Association; and the New England Legal Foundation and Associated Industries of Massachusetts.

284                  451 Mass. 280 (2008)

Bell Atlantic Mobile of Massachusetts Corporation, Ltd. v. Commissioner of Revenue.

the subscriber, the originating handset, and the number the subscriber is trying to reach. The handset must continually monitor and transmit its location so as to maintain a connection as the handset's location changes. The base station receiving the transmission sends the signal to a mobile telephone switching office (MTSO), which then transmits the call either to another cellular base station (if the recipient is also a "cell phone" subscriber) or to the copper or fiber-optic lines owned by the local telephone company or a long-distance carrier (if the recipient is a wired telephone, or "land-line," user).

The handset is powered by an internal battery; the electricity generated by the battery, however, does not leave the handset. The signal sent and received by the handset is radio frequency, not electricity. Therefore, Bell Atlantic Mobile's wireless cellular telecommunications network is classified as a commercial mobile radio service (CMRS) and regulated under G. L. c. 159, the common carrier statute. The board found that wireless cellular telecommunications technology and telephone technology developed on "parallel but distinct tracks," and that the two technologies are both conceptually and historically separate.

Neither the relevant tax statutes — G. L. c. 59, § 39 (central valuation); G. L. c. 59, § 5, Sixteenth (1) (d) (corporate utility exemption); and G. L. c. 63, § 52A (definition of "utility") — nor G. L. c. 166, which regulates "telephone and telegraph companies," provides a specific definition of "telephone company."[9] The Legislature has, however, created a comprehensive regulatory framework governing "telephone companies" in G. L. c. 166. We therefore look to that chapter for guidance in determining whether a CMRS provider such as Bell Atlantic Mobile qualifies as a "telephone company." See *FMR Corp.* v. *Commissioner of Revenue*, 441 Mass. 810, 819 (2004), quoting *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975) (where "two or more statutes relate to the same

[9]Most of the relevant statutes refer to telephone and telegraph "companies." See G. L. c. 59, § 39; G. L. c. 63, § 52A ("telephone and telegraph company" included in definition of "utility corporation"); G. L. c. 166, § 1. Some, however, refer to telephone and telegraph "utilities." See G. L. c. 159, § 12D. In the absence of explicit definitions or distinctions, we assume that the terms "telephone company" and "telephone utility" were used interchangeably by the Legislature.

subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose"). As the board concluded, most of the provisions of G. L. c. 166 are simply inapplicable to CMRS providers. For example, G. L. c. 166, §§ 1-10, concern various stock subscription and filing requirements that must be satisfied before a telephone company may "commence the construction of its line." G. L. c. 166, § 1. Section 15D concerns safety measures for telephone company employees working in areas where telephone cables are located in common trenches with energized electrical cables; §§ 21 through 42B relate to poles and wires. Sections 16 through 20 govern telegraph companies. Bell Atlantic Mobile does not own or need poles, wires, pipes, or underground conduits; it has not argued that it is a telegraph company. Although in the past Bell Atlantic Mobile and other CMRS providers filed annual returns pursuant to G. L. c. 166, § 11, Bell Atlantic Mobile has apparently not filed such a return since 1993, and there is no evidence that the Department of Public Utilities or the Department of Telecommunications and Energy[10] has taken any enforcement action against Bell Atlantic Mobile, or any other CMRS, for failure to so file.

In contrast, as a CMRS provider, Bell Atlantic Mobile is regulated under G. L. c. 159, which governs common carriers. Bell Atlantic Mobile notes, correctly, that land-line telephone companies are also considered common carriers and thus are regulated under both G. L. c. 159 and G. L. c. 166. We fail to see, however, why that fact requires a conclusion that CMRS providers are regulated under G. L. c. 166. The language and structure of the regulatory statutes support the conclusion that the Legislature does not consider CMRS providers such as Bell Atlantic Mobile to be "telephone companies."[11]

The board found additional support for its conclusion in an

---

[10] The Department of Public Utilities was renamed the Department of Telecommunications and Energy in 1997. St. 1997, c. 164, § 28. As of April 10, 2007, the agency has resumed the name Department of Public Utilities. St. 2007, c. 19, § 21.

[11] The board's conclusion that Bell Atlantic Mobile is not a telephone company under G. L. c. 59, § 39, disposed of the § 39 appeals. Because Bell Atlantic Mobile was not entitled to central valuation by the commissioner under § 39, the board ruled that the commissioner had no authority either to

analysis of the corporate utility exemption granted by G. L. c. 59, § 5, Sixteenth (1) (*d*). The board examined the list, set forth in G. L. c. 63, § 52A, of the kind of utility companies entitled to the exemption, and noted that the listed businesses (which include, in addition to telephone and telegraph companies, electric and gas companies, water and aqueduct companies, railroads and railroad terminal companies, street railways, electric railroads, trackless trolleys, and natural gas pipeline companies) all shared a common characteristic: an extensive, physically interconnected distribution infrastructure. The board noted also that all of the listed businesses have historically been considered "natural monopolies" because the extensive capital investment required to create the infrastructure for such a business tends to discourage competition, so that these businesses have historically been allowed to operate as monopolies subject to more extensive government regulation of entry and rates. CMRS providers, in contrast, do not utilize the type of physically connected distribution infrastructure needed by the utilities listed in § 52A; moreover, CMRS providers are highly competitive, and they are not subject to the entry and rate regulation historically applied to § 52A utilities.

Finally, the board pointed out that reference to each utility listed in § 52A is accompanied by a reference to the statute under which it is regulated. Therefore, a telephone or telegraph company would qualify for the corporate utility exemption only if it were "subject to [regulation under] chapter one hundred and sixty-six." G. L. c. 63, § 52A. The board reasoned that these specific references to the relevant regulatory authorities indicate that an entity that provides service similar to an included utility, but not regulated under the same statute, is not a § 52A utility and not entitled to the same favorable tax treatment. As we have already discussed *supra*, the majority of the provisions of G. L. c. 166 are simply inapplicable to a CMRS provider, and Bell Atlantic Mobile's assertion that it might hypothetically be "subject to" G. L. c. 166 in some way is too speculative to be convincing.

grant or to deny the corporate utility exemption, and therefore did not decide in the § 39 appeals whether Bell Atlantic Mobile was entitled to the exemption. The board did decide, in the context of the § 65 appeals, that Bell Atlantic Mobile was not entitled to the exemption. Those appeals, however, are not before us.

Therefore, the language of the corporate utility exemption statutes reinforces the conclusion that Bell Atlantic Mobile is not a telephone company.

Turning to the central valuation statute itself, the board found that Bell Atlantic Mobile owns virtually none of the property that G. L. c. 59, § 39, makes eligible for central valuation. That statute was enacted in 1915 to address the problem of piecemeal assessment of a distribution infrastructure whose components were physically interconnected by a system of wires that crossed municipal boundaries. See *RCN-BecoCom, LLC* v. *Commissioner of Revenue*, 443 Mass. 198, 199 (2005). The commissioner at that time had urged the Legislature to adopt a central valuation system, describing the difficulties of the then-current system in language that focused specifically on the interconnectedness of telephone infrastructure:

> "In almost no case is a line of wires situated wholly in a given municipality. Thus the duty imposed upon assessors is to value a part of an extensive property, — a part which *is not disconnected* and the correct valuation of which cannot be made except by knowledge of the whole property. . . . It is necessary for a board of assessors, as it were, to cut off a line of poles and wires at one boundary of the town, to cut it off at the opposite boundary, and then to find a value for the severed property thus within the limits of the town." (Emphasis added.)

Report of the Tax Commissioner for Year Ending November 30, 1914, Pub. Doc. No. 16, 28 (1915). We agree with the board that it is the interconnectedness of the land-line telephone system infrastructure, and not the mere fact that equipment may be found in several different municipalities, that distinguishes "telephone companies" from other businesses for purposes of central valuation under G. L. c. 59, § 39.[12] The board's interpretation is logical and consistent with the language and purpose of the regulatory and tax statutes. We defer to it not only

[12]Evidence before the board indicated that radio communication existed at the time G. L. c. 59, § 39, was originally enacted. The Legislature presumably was aware of this fact and, had it desired, could have provided for central valuation of wireless communication equipment as well as telephone and telegraph lines.

because the board adopted it, see *Koch* v. *Commissioner of Revenue*, 416 Mass. 540, 555 (1993), but, more importantly, because it appears to be correct.

Bell Atlantic Mobile argues that our decision in *RCN-BecoCom, LLC* v. *Commissioner of Revenue, supra*, compels the conclusion that it is a telephone company for purposes of both central valuation and the corporate utility exemption. In that decision, however, a company that provided land-line telephone service (albeit with a differently designed infrastructure from that of a traditional telephone company) was engaged in the provision of cable television and Internet services as well. *Id.* at 200. The issue was whether the company's telephone service was a sufficiently substantial portion of its over-all business to qualify it as a "telephone company" eligible for central valuation under § 39. *Id.* at 201-202. Therefore, when we found that the company was "undeniably" engaged in providing telephone services, *id.* at 201, that finding signified only that there was no dispute that some of the services that the company provided *over its land-line network* involved two-way voice communications, as opposed to television or Internet services. *Id.* at 200-201. We were not concerned in the *RCN-BecoCom* decision with whether a wireless cellular telecommunications service provider such as Bell Atlantic Mobile, which did not employ a physically interconnected infrastructure, might also be a telephone company; therefore, the logic of that case is inapplicable here.

We acknowledge that our holding today may not reflect the common, indiscriminate references to cellular telephones and traditional, land-line telephones as similar instrumentalities. Ordinarily, words in a statute are to be given their "usual and natural meaning," *Gillette Co.* v. *Commissioner of Revenue*, 425 Mass. 670, 674 (1997), quoting *Commissioner of Revenue* v. *AMI Woodbroke, Inc.*, 418 Mass. 92, 94 (1994), and to some the usual and natural meaning of "telephone" includes both land-line and wireless communication systems. Here, however, where a complex and technical system of regulation and taxation is concerned, the layperson's definition is not controlling. In this context, the common conception of "telephone" as including cellular communication devices is misleading; from a technological and regulatory standpoint, a cellular "telephone" is in fact a

two-way radio. We therefore agree with the suggestion, implicit in the board's findings, that the more technical understanding of "telephone company" — which excludes CMRS providers such as Bell Atlantic Mobile — applies in this case.

Bell Atlantic Mobile maintains that our refusal to treat it as a telephone company for central valuation purposes will chill innovation in the wireless cellular telecommunications industry. That, however, is a policy matter for the Legislature. The board has correctly interpreted and applied the statutes as written.[13,14]

> *Decision of the Appellate Tax Board affirmed.*

---

[13]Because we affirm the board's finding that Bell Atlantic Mobile was not a telephone company at any time, we do not reach the issue whether the commissioner was correct in finding that at the relevant time, it was not a corporation for purposes of the corporate utility exemption.

[14]During the course of these proceedings, the commissioner has changed his position on whether Bell Atlantic Mobile is a telephone company. In the hearings before the board, the commissioner acknowledged that, while the Department of Revenue (department) had treated Bell Atlantic Mobile as a telephone company for purposes of central valuation, there had been conflicting interpretations within the department regarding whether wireless cellular telecommunications providers such as Bell Atlantic Mobile should be so classified. After reviewing the board's findings of fact and report on its decision, the commissioner changed his position, adopting the board's conclusion that Bell Atlantic Mobile was not a telephone company. Bell Atlantic Mobile maintains that we should give greater weight to the commissioner's past practice than to his new position. We disagree. The board correctly gave no weight to the commissioner's prior position, concluding that it was inconsistent with the underlying statutes. See *Massachusetts Hosp. Ass'n* v. *Department of Med. Sec.*, 412 Mass. 340, 346 (1992).