NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12260


D & H DISTRIBUTING COMPANY  vs.  COMMISSIONER OF REVENUE.



Suffolk.     April 3, 2017. - July 31, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, Budd,
& Cypher, JJ.



Taxation, Sales and use tax.  Internet.  Constitutional Law,
     Commerce clause, Interstate commerce, Taxation.  Interstate
     Commerce.




Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Philip S. Olsen (Jonathan A. Block also present) for the
taxpayer.
Julie E. Green, Assistant Attorney General, for
Commissioner of Revenue.


CYPHER, J.  If a consumer enters his or her neighborhood

sporting goods store in Massachusetts and purchases a baseball

glove, the store, as the "vendor," collects the Massachusetts

sales tax owed from the consumer and remits it to the Department

of Revenue (department).  See G. L. c. 64H, §§ 1, 2.  This case

evaluates a more complex transaction in which a Massachusetts consumer instead finds a hypothetical baseball glove online, and purchases it from an out-of-State retailer who then orders the glove from a Massachusetts wholesaler and directs the wholesaler to deliver the glove directly to the doorstep of the Massachusetts consumer.  In that more complicated transaction, known as a "drop shipment sale," the wholesaler is considered to be the vendor, and is obligated to collect sales tax and remit it to the department.

The taxpayer, D & H Distributing Company (D & H), is a company in the position of the hypothetical wholesaler just described.  It appeals from a decision of the Appellate Tax Board (board) in which the board concluded that under a provision of the Massachusetts sales tax statute known as the "drop shipment rule," D & H was responsible for collecting and remitting the sales tax due on products it sold to the out-of-State retailers and then delivered to consumers.  G. L. c. 64H, § 1.  We agree with the board's conclusion, and also reject D & H's argument that the statutory drop shipment rule violates the dormant commerce clause of the United States Constitution.  Accordingly, we affirm the decision of the board.

1.  <u>Statutory framework</u>.  a.  <u>Sales tax</u>.  General Laws c. 64H distinguishes between retail sales transactions and sales-for-resale transactions.  Retail sales of goods and

services are subject to tax in Massachusetts. G. L. c. 64H, § 2. In contrast, sales for resale -- that is, sales of goods by a wholesale supplier to a retailer that will ultimately sell to an end consumer -- are not subject to tax; only the subsequent retail sale is. See G. L. c. 64H, § 1 (defining "retail sale" as "a sale of services or tangible personal property or both for any purpose other than resale"); G. L. c. 64H, § 2 (imposing sales tax upon "sales at retail").

The statute also distinguishes between a retailer that is engaged in business in Massachusetts and one that is not. Where a retailer is engaged in business in Massachusetts but purchases the goods it sells a Massachusetts consumer from a wholesaler, sales tax is charged on the final sale to the customer, and the retailer is the "vendor," G. L. c. 64H, § 1, responsible to pay the tax. G. L. c. 64H, § 2. However, if a retailer is not engaged in business in Massachusetts in the sense that the retailer does not have any in-State physical presence, Massachusetts cannot require the retailer to collect and remit sales tax. See Quill Corp. v. North Dakota, 504 U.S. 298, 314-315 (1992) (retailers without in-State physical presence may not be compelled to collect State sales tax); National Bellas Hess, Inc. v. Department of Revenue of Ill., 386 U.S. 753, 758 (1967)

(same).[1]  In light of the Supreme Court's physical presence

requirement, in the previously described hypothetical, if the

out-of-State retailer of the baseball glove purchased online by

the Massachusetts consumer had no physical business presence

here, it could not be compelled to collect Massachusetts sales

tax.

    b.  Use tax.  The use tax, under G. L. c. 64I, was designed

to prevent loss of sales tax revenue from such out-of-State

retail purchases.  Commissioner of Revenue v. J.C. Penney Co.,

431 Mass. 684, 687 (2000).  The use tax obligates consumers to

remit tax to the Commissioner of Revenue (commissioner) "upon

the storage, use or other consumption in the commonwealth of

tangible personal property or services purchased from any

vendor," G. L. c. 64I, § 2, that was not subject to sales tax

upon the original sale.  G. L. c. 64I, § 3.  In practice,

however, consumers seldom remit use tax of their own volition,

and are not likely even to be aware of the requirement.  See

Tenczar, DOR to Taxpayers:  Don't Forget Use Tax, Commonwealth

---

[1] The United States Supreme Court's decision in Quill v.
North Dakota, 504 U.S. 298 (1992), has been roundly criticized,
including in a recent Supreme Court concurrence, but remains
binding on this court.  See Direct Mktg. Ass'n v. Brohl, 135 S.
Ct. 1124, 1134-1135 (2015) (Kennedy, J., concurring) (describing
Quill as "inflicting extreme harm and unfairness on the States"
in light of "the dramatic technological and social changes that
[have] taken place in our increasingly interconnected economy,"
and comparing $180 billion of United States mail-order sales in
1992 to $3.16 trillion of electronic commerce sales in 2008).

Mag. (Winter 2014) (Massachusetts 2012 use tax compliance rate estimated at under two percent; commissioner believes "people don't pay because they really don't understand how the use tax works").[2]  States that rely on use tax lose substantial tax revenue.  See Direct Mktg. Ass'n v. Brohl, 135 S. Ct. 1124, 1127 (2015) (low compliance with use tax leads to significant revenue loss).[3]

    c.  The drop shipment rule.  The drop shipment rule, G. L. c. 64H, § 1, offers an alternative to the consumer-reported use tax scheme.  The rule applies to a sales transaction such as the hypothetical online baseball glove purchase.  When the wholesale

---

[2] The Commonwealth Magazine article is available at https://commonwealthmagazine.org/economy/003-dor-to-taxpayers-dont-forget-use-tax [https://perma.cc/6NPJ-7BZX].  See also N. Manzi, Use Tax Collection on Income Tax Returns in Other States, Research Department of the Minnesota House of Representatives, at 8 (updated Apr. 2015), http://www.house.leg.state.mn.us /hrd/pubs/usetax.pdf [https://perma.cc/B9PZ-E7QV] (Massachusetts use tax revenues have increased in wake of more explicit reporting structures).

[3] See also Direct Mktg. Ass'n v. Brohl, 814 F.3d 1129, 1133 (10th Cir.), cert. denied, 137 S. Ct. 591 (2016) ("The regimes differ greatly in effectiveness -- compliance with the sales tax is extremely high, and compliance with the use tax is extremely low"); D. Bruce, W.F. Fox, & L. Luna, State and Local Government Sales Tax Revenue Losses from Electronic Commerce, at 4 (2009) (forecasting across Federal, State, and local uncaptured 2012 electronic commerce tax revenue at $11.4 billion).  But see Henchman, Internet Sales Tax Collections Falling Far Short of Experts' Estimates, Tax Found. (Mar. 18, 2013), https://taxfoundation.org /internet-sales-tax-collections-falling-far-short-experts-estimates [https://perma.cc/2U43-27QM] (tax revenue in California and New York from online sales, although substantial, was much lower than forecast).

supplier is engaged in business in the Commonwealth but the retailer is not, the drop shipment rule requires the Massachusetts wholesale supplier to collect and remit the sales tax due on the ultimate retail sale to the consumer.  G. L. c. 64H, § 1.[4]  Because the sales and use tax schemes are "complementary," Town Fair Tire Ctrs., Inc. v. Commissioner of Revenue, 454 Mass. 601, 605 (2009), transactions subject to tax under the drop shipment rule, as retail sales, are exempt from use tax.  G. L. c. 64I, § 7 (a).

The commissioner has consistently interpreted and enforced the statutory drop shipment rule in the manner just described

---

[4] Specifically, the drop shipment rule, which is set out as part of the definition of "[s]ale at retail," provides:

> "When tangible personal property is physically delivered by an owner, a former owner thereof, a factor, or an agent or representative of the owner, former owner or factor, to the ultimate purchaser residing in or doing business in the commonwealth, or to any person for redelivery to the purchaser, pursuant to a retail sale made by a vendor not engaged in business in the commonwealth, the person making or effectuating the delivery shall be considered the vendor of that property, the transaction shall be a retail sale in the commonwealth by the person and that person, if engaged in business in the commonwealth, shall include the retail selling price in its gross receipts, regardless of any contrary statutory or contractual terms concerning the passage of title or risk of loss which may be expressly or impliedly applicable to any contract or other agreement or arrangement for the sale, transportation, shipment or delivery of that property.  He shall include the retail selling price of the property in his gross receipts."  (Emphases added.)

G. L. c. 64H, § 1.

since the sales tax statute became effective in 1968, following the Supreme Court's National Bellas Hess decision that the Court reaffirmed in the Quill case. See, e.g., Letter Ruling 79-43 (Oct. 25, 1979); Letter Ruling 80-76 (Oct. 27, 1980); Letter Ruling 81-85 (Sept. 17, 1981); Letter Ruling 84-26 (Apr. 27, 1984); Letter Ruling 85-35 (Feb. 27, 1985); and Technical Information Release 04-26 (Oct. 21, 2004), 1 Official MassTax Guide, at PWS-112, PWS-451, PWS-481, PWS-521, PWS-640, PWS-696 (Thomson Reuters 2017). See also National Bellas Hess, Inc., 386 U.S. at 758. The rule is undergirded by the separate statutory presumption that a sale is a taxable retail sale, with the burden of proving otherwise placed upon the vendor. G. L. c. 64H, § 8 (a).[5]

2. Background. D & H sells consumer goods to retailers at wholesale and delivers the goods to Massachusetts consumers and others on behalf of those retailers. D & H appeals from a decision of the board rejecting its claim to abate sales taxes

---

[5] General Laws c. 64H, § 8, provides in relevant part:

"(a) It shall be presumed that all gross receipts of a vendor from the sale of services or tangible personal property are from sales subject to tax until the contrary is established. The burden of proving that a sale of services or tangible personal property by any vendor is not a sale at retail shall be upon such vendor unless he takes from the purchaser a certificate to the effect that the service or property is purchased for resale, and such certificate is received and made available to the [Commissioner of Revenue] . . . ."

assessed by the commissioner pursuant to the drop shipment rule for the period from September 1, 2006, to March 31, 2009. D & H challenges the manner in which the commissioner applied the rule to its business, arguing that the drop shipment rule required the commissioner to prove, for each challenged sale transaction, that the out-of-State retailer was not engaged in business in the Commonwealth and thus not itself compelled to collect sales tax. For the reasons that follow, we conclude that the commissioner and the board correctly determined that D & H was responsible as the vendor for collecting and remitting the sales tax due on products it sold to the out-of-State retailers and then delivered to consumers where it failed to meet its burden of proving that the retailers were engaged in business in Massachusetts. Accordingly, we affirm the decision of the board.

a. Facts. We summarize the findings of fact made by the board. See G. L. c. 58A, § 13 ("The decision of the board shall be final as to findings of fact"). D & H is a wholesale supplier of consumer products, including computer products, home electronics, and sporting goods, which it sold primarily to retailers like "big box stores" and their electronic commerce equivalents. At all times relevant to this case, D & H was incorporated and headquartered in Pennsylvania and had six warehouse distribution centers throughout the country. It

employed a sales representative who lived and worked in Massachusetts. D & H considered this presence sufficient to establish nexus for sales tax purposes.[6]

Before contracting with retailers to sell and deliver goods, D & H required that all retailers submit a customer application. As part of that application, retailers were required to list all States in which they did business, and to provide copies of resale certificates swearing that all goods were purchased for resale, with sales tax to be collected by the retailer on ultimate sale to the end consumer. See G. L. c. 64H, § 8. The terms and conditions of the application stated that retailers would be billed sales tax until they furnished such certificates. This was an attempt by D & H to ensure that sales by D & H would not be characterized as taxable sales.[7]

The drop shipment transactions at issue were structured as follows. First, a Massachusetts consumer purchased a product from an out-of-State retailer. Second, the out-of-State

---

[6] "Engaged in business in the commonwealth" is one means of establishing nexus for sales tax purposes; in this opinion, we use "engaged in business" interchangeably with "nexus." See Technical Information Release 96-8 (Oct. 16, 1996), 1 Official MassTax Guide PWS-37 (Thomson Reuters 2017).

[7] Specifically, the application required retailers to certify, "[I]f any property or service so purchased tax-free is used or consumed by the firm to make it subject to a Sales or Use Tax, we will pay the tax due directly to the proper taxing authority when the state law so provides or informs the seller for added tax billing."

retailer purchased the product from D & H. Finally, at the retailer's direction, D & H packaged and shipped the product directly to the Massachusetts consumer. Neither D & H nor the retailer collected sales tax on these drop shipment sales.

The commissioner conducted an audit of D & H records for the years 2006-2009, focusing on drop shipment transactions. The auditor identified the drop-shipment transactions as those with a ship-to address (i.e., the address of the end consumer) in Massachusetts but a bill-to address (that of the retailer) outside Massachusetts. From this group, the auditor first eliminated sales to retailers known to be engaged in business in Massachusetts, such as Best Buy and Target. The auditor similarly removed from consideration sales to retailers registered as Massachusetts vendors for sales tax purposes.

Having thus winnowed the list of taxable drop-shipment transactions, the auditor provided the list to D & H so that it had an opportunity to demonstrate the nontaxable nature of any contested transaction. D & H provided several resale certificates that were sufficient to establish a nontaxable transaction. As to the rest, D & H offered no evidence that the sales at issue were made to retailers engaged in business in the Commonwealth that would thus be responsible for collecting sales tax. At the audit's conclusion, the commissioner assessed D & H additional taxes, interest, and penalties totaling $525,024.17

for the periods at issue.  The auditor used the wholesale resale price as a proxy for the final sales price.

b.  Procedural history.  Following the audit, D & H sought an abatement, which the commissioner denied.  D & H then appealed from this decision to the board.  In its hearing before the board, D & H offered documentary evidence and the testimony of its comptroller, and the commissioner presented her case through the auditor's testimony.  The board issued its decision for the commissioner in October, 2014, followed by findings of fact and report in April, 2016.  D & H then filed its appeal in the Appeals Court, and we transferred the case to this court on our own motion.

3.  Discussion.  a.  Standard of review.  "We will not disturb the board's findings so long as they are supported by substantial evidence and a correct application of the law." Bell Atl. Mobile of Mass. Corp. v. Commissioner of Revenue, 451 Mass. 280, 283 (2008).  Although we resolve questions of law de novo, in doing so we give "substantial deference" to the board's reasonable interpretation of tax statutes because the board is an agency charged with administration of tax law (citation omitted).  Attorney Gen. v. Commissioner of Ins., 450 Mass. 311, 319 (2008).

b.  Burden of proof.  D & H argues that before the commissioner may assess sales tax against a wholesale deliverer

of retail goods pursuant to the drop shipment rule, the commissioner must establish that the retailer in the transactions at issue did not do business in Massachusetts. Although the commissioner must provide an evidentiary basis for an assessment, we reject D & H's contention that the commissioner failed adequately to do so here.

The validity of a tax assessment is presumptively correct, and the taxpayer bears the burden of proving he or she is entitled to an abatement as a matter of law. Schlaiker v. Assessors of Great Barrington, 365 Mass. 243, 245 (1974). See Boston Professional Hockey Ass'n v. Commissioner of Revenue, 443 Mass. 276, 285 (2005), quoting Koch v. Commissioner of Revenue, 416 Mass. 540, 556 (1993) ("The taxpayer has the burden of proving as a matter of law [its] right to an abatement of the tax"). See generally General Elec. Co. v. Assessors of Lynn, 393 Mass. 591, 599 (1984) ("taxpayer bears the burden of persuasion of every material fact"). This is consistent with the general principle that the moving party bears the burden of proof, and finds additional support in several "compelling rationales" unique to tax law. Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 21 (2000). "[N]ot to be disregarded lightly," these "powerful justifications" for the taxpayer's burden include "the vital interest of the government in acquiring its lifeblood, revenue"; "the taxpayer's readier

access to the relevant information," and "the importance of encouraging voluntary compliance by giving taxpayers incentives to self-report and to keep adequate records in case of dispute" (citations omitted). Id.

Certainly, the taxpayer's burden of proof does not relieve the department of its obligation to provide support for the validity of its assessment.[8] See First Nat'l Stores, Inc. v. Assessors of Somerville, 358 Mass. 554, 559 (1971). See also In re Healthco Int'l, Inc., 257 B.R. 379, 382-383 (Bankr. D. Mass. 2001), aff'd as to sales tax issue, U.S. Dist. Ct., No. 01-40047-JLT (D. Mass. July 8, 2001) (commissioner failed to meet burden of production where department had destroyed all audit records and could neither substantiate nor even explain assessment amount). In the absence of supporting evidence for a tax assessment, a taxpayer will be entitled to an abatement. See First Nat'l Stores, Inc., 358 Mass. at 559. See also In re Healthco Int'l, Inc., 257 B.R. at 383, citing Waban, Inc. v. Commissioner of Revenue, 22 Mass. App. Tax Bd. Rep. 31, 38 (1997) (taxpayer entitled to abatement where department

---

[8] The Department of Revenue (department) may verify by audit the accuracy of any filed tax return. G. L. c. 62C, § 26 (b). When such an audit identifies a deficiency, the department may assess the proper tax and make a demand for payment. G. L. c. 62C, §§ 26 (b), 31. A taxpayer disputing the assessment may apply for abatement, and any tax found "excessive in amount or illegal" shall be abated, in whole or in part. G. L. c. 62C, § 37.

introduced no documentary evidence and scant testimony supporting its assessment); Coan v. Commissioner of Revenue, 25 Mass. App. Tax Bd. Rep. 763, 766 (2000) (same, where department was unable to establish evidentiary basis for its assessment despite readier access to relevant records).

In this case, the department established a factual basis for the validity of its assessment, which D & H failed to rebut. D & H had a business practice of requiring any retailer customer to disclose the States in which it did business; the auditor compiled a list of drop shipment transactions in which the retailer was not registered as a Massachusetts vendor and no tax had been collected, affording D & H the opportunity to rebut the conclusion that the retailers did not do business in Massachusetts; and D & H did not do so. Particularly where D & H has "readier access to the relevant information" than does the commissioner, its failure to demonstrate that its retail customers were doing business in the Commonwealth ends the inquiry. See Raleigh, 530 U.S. at 21; William Rodman & Sons, Inc. v. State Tax Comm'n, 373 Mass. 606, 611 (1977) ("[a]s a matter of sound policy," burden should be placed on wholesaler with best access to records). Moreover, D & H bore the burden of proving otherwise pursuant not only to the general principle that the burden rests with the taxpayer claiming an abatement, but also to G. L. c. 64H, § 8 (a) (absent resale certificate

from purchaser, "[t]he burden of proving that a sale of services or tangible personal property by any vendor is not a sale at retail shall be upon such vendor").

c. <u>Dormant commerce clause</u>.[9]  D & H also challenges the drop shipment rule on constitutional grounds, contending that the rule discriminates against interstate commerce.  See art. I, § 8, cl. 3, of the United States Constitution; <u>Complete Auto Transit, Inc</u>. v. <u>Brady</u>, 430 U.S. 274, 279 (1977) (State tax does not unconstitutionally burden interstate commerce if tax is applied to activity having substantial nexus with State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to services provided by State).  Addressing a constitutional challenge to a tax measure "begin[s] with the premise that the tax is endowed with a presumption of validity and is not to be found void unless its invalidity is established beyond a rational doubt."  <u>Andover Sav. Bank</u> v. <u>Commissioner of Revenue</u>, 387 Mass. 229, 235 (1982).

A tax is discriminatory in violation of the dormant commerce clause when it results in "differential treatment of in-[S]tate and out-of-[S]tate economic interests that benefits

---

[9] Article I, § 8, cl. 3, of the United States Constitution -- the commerce clause -- expressly grants Congress broad power to regulate interstate commerce. <u>Comptroller of the Treasury of Md</u>. v. <u>Wynne</u>, 135 S. Ct. 1787, 1794 (2015) (<u>Wynne</u>).  Where Congress has neither preempted nor approved State regulation, the negatively implied <u>dormant</u> commerce clause still operates to limit State interference with interstate commerce. <u>Id</u>.

the former and burdens the latter." Oregon Waste Sys., Inc. v. Department of Envtl. Quality of Or., 511 U.S. 93, 99 (1994). D & H argues that wholesale suppliers with a Massachusetts nexus are penalized for doing business with out-of-State retailers, because transactions with in-State retailers do not cast wholesale suppliers as vendors obligated to collect sales tax. But even assuming this disparity for the sake of argument, such a scheme would establish for Massachusetts retailers a disadvantage at odds with the concerns animating the dormant commerce clause. See Department of Revenue of Ky. v. Davis, 553 U.S. 328, 337-338 (2008) ("The modern law of what has come to be called the dormant [c]ommerce [c]lause is driven by concern about 'economic protectionism -- that is, regulatory measures designed to benefit in-[S]tate economic interests by burdening out-of-[S]tate competitors'" [citation omitted]).

Moreover, by focusing on the party collecting the tax, D & H fails to demonstrate any unconstitutional burden created by the tax itself.[10]  See Quill Corp., 504 U.S. at 312 ("the

---

[10] Because the drop shipment rule requires that vendors include the retail selling price in gross receipts, G. L. c. 64H, § 1, D & H Distributing Company (D & H) argues that it lacks the necessary information for compliance because it has knowledge only of the wholesale price.  But a wholesale supplier like D & H is better positioned than the Commissioner of Revenue (commissioner) to solicit this information in its contractual dealings with thousands of out-of-State retailers.  See Lyon Metal Prods., Inc. v. State Bd. of Equalization, 58 Cal. App. 4th 906, 912 n.3 (1997), cert. denied, 524 U.S. 916 (1998).

[c]ommerce [c]lause and its nexus requirement are informed not so much by concerns about fairness for the individual defendant as by structural concerns about the effects of [S]tate regulation on the national economy"). See also Genentech, Inc. v. Commissioner of Revenue, 476 Mass. 258, 272 (2017). Such an unconstitutional burden exists when a State taxes a transaction "more heavily when it crosses [S]tate lines than when it occurs entirely within the State." Comptroller of the Treasury of Md. v. Wynne, 135 S. Ct. 1787, 1794 (2015), quoting Armco Inc. v. Hardesty, 467 U.S. 638, 642 (1984).[11] Here, "the same sales tax would be imposed on the transaction if it had happened entirely within [Massachusetts]." Lyon Metal Prods., Inc. v. State Bd. of Equalization, 58 Cal. App. 4th 906, 912 (1997), cert. denied, 524 U.S. 916 (1998) (finding no commerce clause violation under

---

Alternatively, a standard markup may be codified. See 2 J.R. Hellerstein & W. Hellerstein, State Taxation § 18.04[1][b][iv] (3d ed. 2002) (citing Cal. Code Regs. tit. 18, § 1706[c][2], which calculates retail price using ten per cent markup on drop shipper's price absent other evidence). We do not resolve the issue here, where the commissioner assessed sales tax based only on the lower wholesale price.

[11] A State tax subjecting interstate commerce to the burden of "multiple taxation" also creates an undue burden. Wynne, 135 S. Ct. at 1794. D & H argues that the drop shipment rule does this by subjecting the same transactions to both sales and use tax. This argument misapprehends the complementary nature of our sales and use tax schemes, discussed supra, under which any transaction subject to sales tax is exempt from use tax. G. L. c. 64I, § 7 (a). Even ignoring the low consumer compliance with the use tax, any use tax collected in error on a drop shipment entitles the consumer to a credit.

California's cognate rule).  Because transactions with retailers in and out of State are equally subject to tax, there is no greater burden on the interstate transaction and thus no violation of the dormant commerce clause.

<u>Decision of the Appellate
Tax Board affirmed</u>.